# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | | |
|---|---|---|
| Victor Alanis, | ) | |
| Petitioner, | ) | |
| | ) | No. 20 CV 50100 |
| v. | ) | Judge Iain D. Johnston |
| | ) | |
| Andrew Ciolli,[1] | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Victor Alanis seeks restoration of 27 days of good conduct time that he lost for allegedly fighting with other inmates. For the reasons that follow, his petition [1] is denied.

## BACKGROUND

Mr. Alanis was an inmate at AUSP Thomson when he initiated the petition, and is currently housed at USP Victorville in California.[2] He is serving a 384-month sentence after being convicted of two firearm offenses in federal court in California. *See United States v. Victor Alanis*, Case No. 05 CR 465-2 (E.D. Calif.). His projected release date is July 17, 2034. *See* https://www.bop.gov/inmateloc (last visited October 26, 2021).

Mr. Alanis lost 27 days good conduct time after an incident on August 15, 2019, at AUSP Thomson. According to a Bureau of Prisons incident report, a corrections officer noticed a fight occurring between inmates in the recreation area. Dkt. 13 at 11. According to the report, Alanis was part of a group of inmates who were punching two other inmates. *Id.* The officer directed the inmates to stop fighting, but they did not stop until he sprayed them with pepper spray. *Id.*

According to the incident report, Lt. D. Sykes delivered a copy of the report to Mr. Alanis on the same day as the underlying incident, August 15, 2019, and began an investigation. Dkt. 13 at 11-12. Lt. Sykes contends in the investigation report that he read the incident report to Mr. Alanis, advised him of his rights, and noted that Mr. Alanis identified no witnesses and refused to make a statement. *Id.* at 12. Lt. Sykes concluded that charges were warranted and referred the matter to the Unit Disciplinary Committee. *Id.* Officer Tabitha Coleman conducted the UDC hearing on August 20, 2019. *Id.* at 13. According to Officer Coleman, Mr. Alanis had no comment for her about the incident. *Id.* Officer Coleman concluded that sanctions including loss of good conduct time and phone and commissary privileges were warranted, but greater than the sanctions the UDC could impose, and so she referred the matter to the Disciplinary Hearing Officer. *Id.* After Officer Coleman decided on August 20, 2019, to refer the matter to the DHO,

---

[1] The warden of AUSP Thomson is now Andrew Ciolli. Pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted as the defendant to this suit.

[2] " . . . a prisoner's transfer from one federal facility to another during the pendency of a habeas corpus proceeding does not affect the original district court's jurisdiction." *In re Hall*, 988 F.3d 376, 378 (7th Cir. 2021).

Mr. Alanis signed two forms. One advised him of his right to present witnesses and have a staff representative at the DHO hearing. Dkt. 13 at 13. On the other, he stated that he did not wish to have witnesses or a staff representative. *Id.* at 14. A couple of weeks later he filed a revised form indicating that he wanted Dr. Britton to be his staff representative. *Id.* at 16.

DHO Officer T. Ingram held Mr. Alanis' disciplinary hearing on September 25, 2019. *Id.* at 22. Dr. Britton served as Mr. Alanis' staff representative. *Id.* at 20. In a written decision, Officer Ingram found that based on the greater weight of the evidence, Mr. Alanis had committed the prohibited act of fighting. *Id.* at 21. The evidence Officer Ingram relied on in reaching that decision included the description of the fight in the incident report, pictures of injuries on Mr. Alanis and the other inmates involved in the fight, Mr. Alanis' decision not to make a statement to the investigating officer, his statement at the UDC hearing that he had "no comment," and his statement at the DHO hearing that he was "not guilty." *Id.* According to the DHO report, Mr. Alanis declined to present witnesses, but did provide documentary evidence that Officer Ingram considered, though the report does not identify what documents Mr. Alanis presented. *Id.* Officer Ingram imposed sanctions including 27 days loss of good conduct time and 90 days loss of phone and commissary privileges. *Id.*

In a petition filed under 28 U.S.C. § 2241, Mr. Alanis seeks the return of his 27 days of good conduct time. In support, he argues that he was denied good time credits without due process. He sets out multiple grounds for his petition: (1) investigating officer Lt. Sykes did not read him his rights, the charges against him, and did not ask for his statement in violation of the Bureau of Prisons' Program Statement on the Inmate Discipline Program; (2) Lt. Sykes was biased against him, which infected the entire disciplinary process; and (3) his staff representative was not allowed to assist him or investigate the incident, including not being allowed to review a videotape which would show that Lt. Skyes did not read Mr. Alanis his rights. The petition is now fully briefed.

## ANALYSIS

Persons in the custody of the Bureau of Prisons have a liberty interest in good conduct time, and can challenge the loss of good conduct time by filing a motion for habeas relief under 28 U.S.C. § 2241. *See Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983). Although prisoners have due process rights in prison disciplinary proceedings, such proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). As a result, a prisoner has received due process if each of the following requirements are met: the prisoner (1) receives written notice of the disciplinary charges at least 24 hours before a disciplinary hearing; (2) has an opportunity to be heard before an impartial decision maker; (3) is able to call witnesses and present evidence that will not be unduly hazardous to safety or correctional goals; (4) receives a written statement of the evidence relied on and the reason for the decision; and (5) receives disclosures of any exculpatory evidence. *Id.* at 564-66.

The disciplinary decision will be upheld as long as it is supported by "some evidence in the record," which is a meager standard. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) ("once the meager threshold has been crossed our inquiry ends."). On habeas review, the court

does not reweigh the evidence or determine credibility. *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). Rather, the court merely looks to whether there is *any* evidence in the record supporting the disciplinary decision. *See Henderson v. U.S. Parole Com'n*, 13 F.3d 1073, 1077 (7th Cir. 1994) (a court can overturn a disciplinary decision only if no reasonable adjudicator could have found the inmate guilty of the offense based on the evidence presented).

A federal prisoner must exhaust his federal administrative remedies before seeking habeas relief in court, but the requirement is not jurisdictional and so is waived if not raised by the respondent. *Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987). The respondent has not raised the issue of exhaustion, and so the Court proceeds to the merits of Mr. Alanis' arguments.

### 1. Violations of Inmate Discipline Program – Rights, Charges, Statement

Mr. Alanis argues that he was denied due process because no one read him his rights, the charges against him, or asked for his statement, all in violation of Bureau of Prison regulations. Mr. Alanis does not identify the specific regulations, but presumably refers to Program Statement 5270.09, also known as the Inmate Discipline Program. *See* 28 C.F.R. § 541.1, *et seq.* Under 28 C.F.R. § 541.5(b)(1), an investigator must inform an inmate of the charges against him, and under (b)(2) must ask for a statement.

It is not clear that the regulations were violated as Mr. Alanis contends. The incident report itself states that Mr. Alanis was being charged with fighting, and according to the report Lt. Sykes gave it to him on August 15, 2019. Dkt. 13 at 11. Mr. Alanis does not contend he never received the report, and does not contend that the report failed to inform him of the charges against him. In addition, the report notes that Mr. Alanis refused to make a statement to Lt. Sykes during his investigation, and had no comment for Officer Coleman when she conducted the UDC hearing. *Id.* at 11-12.

But even if corrections officers did violate Inmate Discipline Program regulations, "the regulations themselves do not create a protected liberty interest or define the procedural requirements of due process." *Rivero v. Roal*, No. 12 CV 132, 2013 U.S. Dist. LEXIS 155711, at *9-10 (S.D. Ill. Oct. 2, 2013). "Prison regulations give rise to a liberty interest only if they shield inmates from an 'atypical or significant hardship . . . in relation to the ordinary incidents of prison life.'" *Jones v. Cross*, 637 F.3d 841, 846 (7th Cir. 2011) (citation omitted). Mr. Alanis does not explain any atypical or significant hardship he faced. Nor would he seem able to given that (1) he received notice of the charges against him well in excess of 24 hours before his disciplinary hearing, which *Wolff* explains is what due process requires, and (2) he admits that he "made a blank statement of 'not guilty'" when given a chance to be heard, explaining that he did so because at "those times I did not have access to the full evidence against me," Dkt. 15 at 5.

Mr. Alanis contends that the Bureau of Prisons' disciplinary regulations are a "mockery" if he is entitled to no more than the "minimal Due Process requirements" of *Wolff*. Dkt. 15 at 3. Nevertheless, as discussed above, the regulations themselves do not create a protected liberty interest unless they shield inmates from an atypical or significant hardship. In the absence of any

atypical or significant hardship, he has not established any violation of his due process right to written notice of the charges against him or the opportunity to be heard.

**2.    Bias**

Mr. Alanis contends that he was denied due process because the investigator, Lt. Sykes, falsified his report and was biased.  Mr. Alanis identifies two false statements that Lt. Skyes allegedly made:  (1) that he had read Mr. Alanis his rights, and (2) a note in his investigation report that Mr. Alanis "displayed a poor attitude during this investigation."  Dkt. 13 at 12.  To establish a due process violation based on bias, Mr. Alanis must show that his decision-maker was biased, for instance that his decision-maker was involved in the investigation of the underlying charge.  *See Temple v. Davis*, 84 Fed. Appx. 642, 644 (7th Cir. 2003).  The hearing officer who imposed sanctions was not investigator Lt. Sykes, but rather was Disciplinary Hearing Officer T. Ingram.  Mr. Alanis does not contend that Officer Ingram participated in the investigation, but does contend that she was influenced by Lt. Sykes' report and therefore the alleged bias carried over from Lt. Sykes. Although Mr. Alanis contends that Officer Ingram stated during the hearing that she would "use the report of my 'poor attitude' against me," the DHO report does not list Mr. Alanis' reported poor attitude among the evidence the officer considered in reaching her decision.  Dkt. 13 at 21.  In any event, the due process clause requires only that the decision-maker not participate in the investigation, and because Mr. Alanis never makes such an allegation, he has not established that he was denied due process because of bias.

**3.    Staff Representative**

Next, Mr. Alanis contends that he was denied due process because his staff representative was not allowed to investigate the incident or otherwise assist him.  The only evidence Mr. Alanis contends his staff representative would have uncovered is a video recording of his meeting with Lt. Sykes, which would have revealed that Lt. Sykes did not read him his rights. Dkt. 1 at 7, Dkt. 15 at 6.  But as discussed earlier, due process required only that Mr. Alanis receive written notice of the charges against him 24 hours before any disciplinary hearing, and it is undisputed that Mr. Alanis received the required notice.  Moreover, under *Wolff* an inmate is entitled to help from a fellow inmate or lay staff only if the inmate is illiterate or where the case against him involves issues so complex that he would be unable to collect and present evidence needed to adequately comprehend the case.  *See Wolff*, 418 U.S. at 570.  Mr. Alanis' incident involved a fight among inmates, and nothing in the record supports a view that the incident involved issues so complex that Mr. Alanis would need help understanding them or defending against them.  Although his facility allowed him a staff representative, under *Wolff* due process did not compel it to do so, and therefore his displeasure with the scope of assistance he received does not give rise to a due process violation.

**CONCLUSION**

For the reasons given, Mr. Alanis' petition [1] is denied, and this case is closed.  Mr. Alanis is advised that this is a final decision ending his case in this Court.  If he wants to appeal, he must file a notice of appeal with this Court within 60 days of the entry of judgment.  *See* Fed.

R. App. P. 4(a)(1). Mr. Alanis need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

To the extent one is required, the Court declines to issue a certificate of appealability. *See* Rule 11 of the Rules Governing § 2254 Cases. Mr. Alanis cannot show that reasonable jurists would debate, much less disagree, with this Court's resolution of his § 2241 petition. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2), and *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Date: October 26, 2021        By: _____
                                   Iain D. Johnston
                                   United States District Judge